**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CHRISTINA MAILHOIT, individually and on behalf of all others similarly situated,

Plaintiff,

v.

KAPLAN NORTH AMERICA, LLC,

Defendant.

______________________________________ /

**Case No. __________________**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Christina Mailhoit, individually and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against defendant Kaplan North America, LLC ("Kaplan" or "Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Kaplan for its failure to properly secure Plaintiff's and Class Members' personally identifiable information ("PII"). On October 31, 2025 — the day after an unauthorized actor gained access to Plaintiff's PII in Kaplan's computer network — her identity was stolen. That has resulted in an unwarranted 100-point decrease in Plaintiff's credit score.

2. Kaplan failed to comply with industry standards to protect information systems that contain PII. Plaintiff seeks, among other things, orders requiring Kaplan to fully and accurately disclose the nature of the information that has been compromised and to adopt

sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3. Kaplan is an educational services provider that offers test preparation for college, graduate school, and medical school exams, professional licensing and certification for real estate and home inspection professionals, and academic support.

4. On March 17, 2026, Kaplan disclosed to government authorities that it had recently concluded its investigation of an incident involving unauthorized access to its computer network. According to Kaplan, "an unauthorized actor accessed Kaplan's computer servers between October 30, 2025 and November 18, 2025 and took certain files."[1]

5. Kaplan further disclosed that the "unauthorized actor" gained access to the names, Social Security numbers, and/or driver's license numbers of hundreds of thousands of its customers.

6. Kaplan knowingly obtained sensitive PII and had a resulting duty to securely maintain that information in confidence. Plaintiff and Class Members would not have provided their PII to Kaplan if they had known that Kaplan would not ensure that it used adequate security measures.

7. Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII was exposed in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief, including substantial improvements to Kaplan's data security policies and practices.

---

[1] Appendix, available at https://www.maine.gov/cgi-bin/agviewerad/ret?loc=3699 (last visited Apr. 16, 2026).

## PARTIES

8. Plaintiff Christina Mailhoit is a resident of Blackfoot, Idaho, and a former Kaplan student. Ms. Mailhoit received a letter from Kaplan disclosing that her PII was accessed in the course of the Data Breach. As is further detailed below, Ms. Mailhoit's identity was stolen on October 31, 2025 — the day after the Data Breach commenced.

9. Defendant Kaplan North America, LLC is a Delaware corporation, with its principal place of business in Fort Lauderdale, Florida.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Minimal diversity exists because a substantial portion of putative class members reside outside of Florida. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

11. This Court has general personal jurisdiction over Kaplan because it is headquartered in and maintains its principal place of business in this District. *See* 28 U.S.C. 1391(a). Kaplan is authorized to and regularly conducts business in Florida.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### The Data Breach

13. Kaplan is an educational services provider that offers test preparation for college, graduate school, and medical school exams, professional licensing and certification for real estate and home inspection professionals, and academic support. Kaplan touts itself as "a pioneer in expanding educational access and transforming learning through new technologies", and claims to have serviced "more than one million students."[2]

14. Due to the nature of the services it provides, Kaplan acquires and electronically stores PII. Kaplan was therefore required to ensure that PII was not disclosed or disseminated to unauthorized third parties without Plaintiff's and Class Members' express written consent.

15. On March 17, 2026, Kaplan reported to multiple government authorities that it had recently concluded its investigation of the Data Breach. According to Kaplan, "an unauthorized actor accessed Kaplan's computer servers between October 30, 2025 and November 18, 2025 and took certain files."[3]

16. Kaplan further disclosed that the "unauthorized actor" gained access to the names, Social Security numbers, and/or driver's license numbers of its customers, and reported to the Oregon Attorney General that the Data Breach affected approximately 1.4 million people.[4]

---

[2] Innovators in Lifelong Learning, available at https://kaplan.com/about (last visited on Apr. 16, 2026).

[3] Appendix, available at https://www.maine.gov/cgi-bin/agviewerad/ret?loc=3699 (last visited Apr. 16, 2026).

[4] Search Data Breaches, available at https://justice.oregon.gov/consumer/DataBreach/ (last visited Apr. 16, 2026).

17. Kaplan has not disclosed any further information regarding the Data Breach, which is inimical to its customers' interests. Kaplan should be required to disclose why PII was stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and what Kaplan knows about the degree to which the data has been disseminated.

18. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Kaplan has taken to secure the PII still in its possession. Plaintiff seeks to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiff's and Class Members' interests, and ensure that Kaplan has proper measures in place to prevent similar incidents from occurring in the future.

**Kaplan's Security Representations**

19. Kaplan maintains a "Privacy Policy" that outlines the information that it maintains and its promises to keep Plaintiff's and Class Members' data safe.[5]

20. Kaplan acknowledges collecting what it calls "Customer Records Information", which includes "name, signature, Social Security number, physical characteristics or description, passport number, driver's license or state identification card number, education, employment, employment history, bank account number, credit or debit card number, or other financial information."[6]

---

[5] Privacy Policy, available at https://kaplan.com/privacy-policy (last visited Apr. 16, 2026).

[6] *Id*.

**Kaplan Stores Plaintiff's and Class Members' PII**

21. Kaplan obtained and stored a massive amount of PII. As a condition of purchasing its services, Kaplan required that customers entrust it with highly confidential PII.

22. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Kaplan assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

23. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII, and relied on Kaplan to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII is Valuable and Subject to Unauthorized Disclosure**

24. Kaplan was aware that the PII it collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

25. PII is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft and financial fraud.[7] Indeed, a robust illegal market exists in which criminals openly post stolen PII on multiple underground websites, commonly referred to as the "dark web". Moreover, "fullz" packages, which include "extra information about [a] legitimate credit card owner" in case a scammer's "bona fides" are challenged when they attempt to use the credit card, are also offered on the dark web.[8]

---

[7] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last visited Apr. 16, 2026).

[8] Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud- dark-web/ (last visited Apr. 16, 2026).

26. The ramifications of Kaplan's failure to keep Plaintiff's and Class Members' PII secure are long-lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

27. Further, criminals often trade stolen PII for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

28. Kaplan knew, or should have known, the importance of safeguarding PII entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members because of a breach. Kaplan failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**The Data Breach Exposed Plaintiff and Class Members to Identity Theft and Out-of-Pocket Losses**

29. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

30. Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII, Kaplan's policies and practices with respect to maintaining the security of Plaintiff's and Class Members' PII were reckless, or at the very least, negligent.

31. In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff

and Class Members should be compensated for the time they have expended because of Kaplan's misfeasance.

32. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[9]

33. As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. invasion of privacy;

b. theft of their PII;

c. lost or diminished value of their PII;

d. lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

e. loss of the benefit of their bargain;

f. lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

g. statutory damages;

h. nominal damages; and

i. the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and

9 2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last visited Apr. 16, 2026).

(b) remains backed up in Kaplan's possession and is subject to further unauthorized disclosures so long as Kaplan fails to undertake appropriate and adequate measures to protect the PII.

**Kaplan Violated FTC Guidelines**

34. The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Kaplan from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

35. The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[10]

36. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[11] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

---

[10] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last visited Apr. 16, 2026).

[11] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last visited Apr. 16, 2026).

37. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[12]

38. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

39. Kaplan failed to properly implement basic data security practices. Kaplan's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**Plaintiff's Experience**

40. Plaintiff Christina Mailhoit enrolled in a Kaplan educational program in or around 2011.

41. Kaplan obtained Ms. Mailhoit's PII in the course of conducting its regular business operations. At the time of the Data Breach, Kaplan retained Ms. Mailhoit's PII.

---

[12] FTC, Start With Security, *supra*.

42. On January 29, 2026, Ms. Mailhoit received a notification that her credit score had dropped by 74 points due to a delinquent payment reported on her Citibank credit card. Ms. Mailhoit had no knowledge of having a Citibank credit card, nor had she ever applied for a Citibank credit card.

43. Ms. Mailhoit subsequently recovered deleted emails from Citibank dated October 31, 2025; the first email was reported that she had been approved for a Citi Strata Elite credit for which she had not applied, and the second email reflected that her temporary card details were available for immediate use.

44. Another recovered email dated November 29, 2025 reflected that Ms. Mailhoit had been sent a statement from Citibank claiming that she owed Citibank thousands of dollars.

45. An email dated December 28, 2025, contained a notice from Citibank that Ms. Mailhoit's payment was past due.

46. After discovering the theft of her identity on January 29, 2026, Ms. Mailhoit filed a police report addressing the identity theft on February 4, 2026, and subsequently reported the theft to the Federal Trade Commission.

47. By mid-March of 2026, Ms. Mailhoit's credit score had fallen by 100 points from her score as of January 11, 2026.

48. Ms. Mailhoit has spent over 100 hours addressing the issues resulting from Kaplan's failure to properly secure her PII. A substantial portion of that time was spent seeking to determine how cybercriminals were able to access her PII.

49. Ms. Mailhoit could not identify the reason for the theft of her identity because Kaplan did not disclose the Data Breach until March of 2026. Late that month, Ms. Mailhoit received a letter from Kaplan disclosing that "an unauthorized actor accessed our computer

servers between October 30, 2025 and November 18, 2025 and took certain files," and that Kaplan had "determined that one or more files contained your name, Social Security number, and/or driver's license number." October 30 is the day preceding the date on which a criminal used Ms. Mailhoit's PII to fraudulently obtain a credit card from Citibank.

50. Had Kaplan disclosed the Data Breach promptly upon discovering it, Ms. Mailhoit might have avoided the reduction in her credit score, as well as a substantial portion of the expenditure of her time that resulted from the Data Breach.

51. Ms. Mailhoit greatly values her privacy and is very careful about sharing her sensitive PII. Ms. Mailhoit diligently protects her PII, takes proactive steps to ensure that her PII is kept safe and secure, and stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the Internet or any other unsecured source.

52. Kaplan obtained and continues to maintain Ms. Mailhoit's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

53. The Data Breach has caused Ms. Mailhoit to suffer substantial injury, as well as imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

54. As a result of the Data Breach, Ms. Mailhoit is at present risk and will continue to be at increased risk of additional identity theft and fraud for years to come.

55. Ms. Mailhoit has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Kaplan's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

56. This civil action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4). Plaintiff seeks certification of the following class:

> All persons in the United States and its territories whose PII was compromised in the Data Breach.

57. Excluded from the Class are Kaplan, any entity in which Kaplan has a controlling interest, and Kaplan's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

58. Plaintiff reserves the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

59. **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. Upon information and belief, the number of individuals whose PII was exposed by Kaplan is approximately 1.4 million. All Class Members' names and addresses are available from Kaplan's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

60. **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether and to what extent Kaplan had a duty to protect the Plaintiff's and Class Members' PII;

b. Whether Kaplan was negligent in collecting and storing Plaintiff's and Class Members' PII;

c. Whether Kaplan had duties not to disclose Plaintiff's and Class Members' PII to unauthorized third parties;

d. Whether Kaplan took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

e. Whether Kaplan failed to adequately safeguard Plaintiff's and Class Members' PII;

f. Whether Kaplan failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

g. Whether Kaplan adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

h. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Kaplan's wrongful conduct;

i. Whether Plaintiff and Class Members are entitled to restitution because of Kaplan's wrongful conduct;

j. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k. Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

61. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was disclosed by Kaplan. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Kaplan's common misconduct. Plaintiff is advancing the same claims and legal

theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

62. **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Kaplan to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

63. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Kaplan has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Kaplan's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Kaplan's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

64. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually

afford to litigate a complex claim against large corporations, like Kaplan. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

65. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Kaplan would necessarily gain an unconscionable advantage in non-class litigation, since Kaplan would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

66. The litigation of Plaintiff's claims is manageable. Kaplan's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

67. Adequate notice can be given to Class Members directly using information maintained in Kaplan's records.

68. Unless a class-wide injunction is issued, Kaplan may continue to maintain inadequate security with respect to Plaintiff's and Class Members' PII, Kaplan may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Kaplan may continue to act unlawfully as set forth in this Complaint.

69. Kaplan has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

**COUNT I**
**NEGLIGENCE AND NEGLIGENCE *PER SE***
**(on behalf of Plaintiff and the Class)**

70. Plaintiff hereby repeats and realleges paragraphs 1 through 68 of this Complaint and incorporates them by reference herein.

71. Kaplan knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Kaplan's security protocols to ensure that Plaintiff's and Class Members' PII in Kaplan's possession was adequately secured and protected, that Plaintiff's and Class Members' PII on Kaplan's networks was not accessible to criminals without authorization, and that Kaplan's employees tasked with maintaining such information were adequately trained on security measures regarding the security of Plaintiff's and Class Members' PII.

72. Plaintiff and Class Members entrusted their PII to Kaplan with the understanding that Kaplan would safeguard their information, use their PII for business purposes only, and not disclose their PII to unauthorized third parties.

73. Kaplan knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiff's and Class Members' PII involved an unreasonable risk of harm to Plaintiff and Class Members.

74. Kaplan also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII.

75. A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of prior data breaches and disclosures prevalent in today's digital landscape.

76. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Kaplan knew or should have known of the inherent risks in collecting and storing Plaintiff's and Class Members' PII, the critical importance of providing adequate security of that information, the necessity for encrypting PII stored on Kaplan's systems, and that it had inadequate IT security protocols in place to secure Plaintiff's and Class Members' PII.

77. Kaplan's misconduct created a foreseeable risk of harm to Plaintiff and Class Members. Kaplan's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

78. Plaintiff and Class Members had no ability to protect their PII that was in Kaplan's possession.

79. Kaplan was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

80. Kaplan had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' PII within its possession was compromised and precisely the type(s) of information that were compromised.

81. Kaplan had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII.

82. Kaplan systematically failed to provide adequate security for data in its possession.

83. Kaplan, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within its possession.

84. Kaplan, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII.

85. Kaplan, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the PII within its possession might have been compromised and precisely the type of information compromised.

86. Kaplan's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII to be compromised.

87. But for all of Kaplan's acts of negligence detailed above, including allowing cyber criminals to access its systems, Plaintiff's and Class Members' PII would not have been compromised.

88. Plaintiff never transmitted her unencrypted PII over the internet or any other unsecured source.

89. Following the Data Breach, Plaintiff's PII has been seized by unauthorized third parties who are now free to exploit and misuse that PII, and Plaintiff is unable to prevent its further dissemination. Plaintiff's PII are forever compromised.

90. But for the Data Breach, Plaintiff's would not have incurred the loss and publication of their PII and other injuries.

91. There is a close causal connection between Kaplan's failure to implement security measures to protect Plaintiff's and Class Members' PII and the harm suffered, or risk of

imminent harm suffered by Plaintiff and Class Members. Plaintiff's and Class Members' PII were accessed and compromised as the proximate result of Kaplan's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures and encryption.

92. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring their accounts, loss of privacy, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

93. As a result of Kaplan's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their PII, which are still in the possession of third parties, will be used for fraudulent purposes.

94. In addition, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Kaplan for failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Kaplan's duty.

95. Kaplan violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. Kaplan's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach involving that PII.

96. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

97. Kaplan's violation of Section 5 of the FTC Act constitutes negligence *per se*.

98. Plaintiff seeks the award of actual damages on behalf of herself and the Class.

99. Plaintiff seeks injunctive relief on behalf of the Class in the form of an order (1) compelling Kaplan to institute appropriate data collection and safeguarding methods and policies with regard to PII; and (2) compelling Kaplan to provide detailed and specific disclosure of what types of PII have been compromised as a result of the data breach.

**COUNT II**
**BREACH OF EXPRESS CONTRACT**
**(on behalf of Plaintiff and the Class)**

100. Plaintiff hereby repeats and realleges paragraphs 1 through 68 of this Complaint and incorporates them by reference herein.

101. Plaintiff and Class Members entered into valid and enforceable contracts through which they paid money to Kaplan in exchange for services. Those contracts included promises by Kaplan to secure, safeguard, and not disclose Plaintiff's and Class Members' PII.

102. Kaplan's Notice of Privacy Practices memorialized the rights and obligations of Kaplan's students and customers. This document was, upon information and belief, provided to Plaintiff and Class Members in a manner in which it became part of the agreement for services..

103. In the Notice of Privacy Practices, Kaplan commits to protecting the privacy and security of PII and promises to never share Plaintiff's and Class Members' PII except under certain limited circumstances.

104. Plaintiff and Class Members fully performed their obligations under their contracts with Kaplan.

105. However, Kaplan did not secure, safeguard, and/or keep private Plaintiff's and Class Members' PII. Kaplan therefore breached its contracts with Plaintiff and Class Members.

106. Kaplan allowed third parties to access, copy, and/or exfiltrate Plaintiff's and Class Members' PII without permission. Kaplan therefore breached its Privacy Policy as it pertained to Plaintiff and Class Members.

107. Kaplan's failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA and applicable industry standards, diminished the value of the services Kaplan provided to Plaintiff and Class Members.

108. As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein, including by Kaplan's failure to fully perform its part of its bargain with Plaintiff and Class Members.

109. As a direct and proximate result of Kaplan's conduct, Plaintiff and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(on behalf of Plaintiff and the Class)**

110. Plaintiff hereby repeats and realleges paragraphs 1 through 68 of this Complaint and incorporates them by reference herein.

111. Plaintiff and Class Members have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Kaplan and that was stolen in the Data Breach.

112. Kaplan benefitted from the conferral upon it of Plaintiff's and Class Members' PII, and by its ability to retain and use that information. Kaplan understood that it so benefited.

113. Kaplan also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential and that its value depended upon Kaplan maintaining its privacy and confidentiality.

114. But for Kaplan's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and entrusted with Kaplan. Further, if Kaplan had disclosed that its data security measures were inadequate, Kaplan would not have been permitted to continue in operation by regulators and the financial marketplace.

115. As a result of Kaplan's wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate data security measures, its continued maintenance and use of Plaintiff's and Class Members' PII without having adequate data security measures, and its other conduct facilitating the theft of that PII), Kaplan has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

116. Kaplan's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiff's and Class Members' sensitive PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

117. Under the common law doctrine of unjust enrichment, it is inequitable for Kaplan to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiff's and Class Members' PII in an unfair and unconscionable manner. Kaplan's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

118. The benefit conferred upon, received, and enjoyed by Kaplan was not conferred officiously or gratuitously, and it would be inequitable and unjust for Kaplan to retain the benefit.

**COUNT IV**
**<u>INJUNCTIVE/DECLARATORY RELIEF</u>**
**(on behalf of Plaintiff and the Class)**

119. Plaintiff hereby repeats and realleges paragraphs 1 through 68 of this Complaint and incorporates them by reference herein.

120. Kaplan owes a duty of care to Plaintiff and Class Members requiring it to adequately secure PII.

121. Kaplan still stores Plaintiff's and Class Members' PII.

122. Since the Data Breach, Kaplan has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

123. Kaplan has not satisfied its legal duties to Plaintiff and Class Members.

124. Actual harm has arisen in the wake of the Data Breach regarding Kaplan's duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII, and Kaplan's failure to address the security failings that led to that exposure.

125. Plaintiff, therefore, seeks a declaration: (a) that Kaplan's existing security measures do not comply with its duties of care to provide adequate security; and (b) that to comply with its duties of care, Kaplan must implement and maintain reasonable security measures, including, but not limited to, the following:

a. ordering that Kaplan engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Kaplan's systems on a periodic basis, and ordering Kaplan to promptly correct any problems or issues detected by such third-party security auditors;

b. ordering that Kaplan engage third-party security auditors and internal personnel to run automated security monitoring;

c. ordering that Kaplan audit, test, and train its security personnel regarding any new or modified procedures;

d. ordering that Kaplan segment PII by, among other things, creating firewalls and access controls so that if one area of Kaplan's system is compromised, hackers cannot gain access to other portions of Kaplan's system;

e. ordering that Kaplan purge, delete, and destroy in a reasonably secure manner PII that are not necessary for its provision of services;

f. ordering that Kaplan conduct regular computer system scanning and security checks; and

g. ordering that Kaplan routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiff and her counsel to represent the Class;

b. for equitable relief enjoining Kaplan from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c. for equitable relief compelling Kaplan to use appropriate cybersecurity methods and policies with respect to PII collection, storage, and protection, and to disclose with specificity to Class Members the types of PII compromised;

d. for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e. for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. for prejudgment interest on all amounts awarded; and

g. such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 20, 2026

Respectfully submitted,

*/s/ D. Todd Mathews*

**BAILEY & GLASSER, LLP**

D. Todd Mathews, FL Bar Number 163104

Bart D. Cohen (*pro hac vice* forthcoming)
Panida A. Anderson (*pro hac vice* forthcoming)
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
(202) 463-2101
tmathews@baileyglasser.com
bcohen@baileyglasser.com
panderson@baileyglasser.com

*Attorneys for Plaintiff and the Proposed Class*